Hope Estate.

Argued November 10, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

*John C. Noonan,* for appellant.

*Edward S. Lower,* for appellants.

*Frank F. Truscott,* with him *Otis W. Erisman,* for appellee.

OPINION BY MR. JUSTICE BELL, March 22, 1960:

S. Emma P. Hope died on April 13, 1914, leaving no children or issue to survive her. By her will she gave, devised and bequeathed her residuary estate to her trustees on three separate trusts: A trust to pay the income* to her sister, Annie J. Thompson, for her life; another trust to pay the income* to her niece, Helen Thompson Theobald, for her life; and another trust to pay the income* to her niece, Lillian Pennell Thompson Walls, for her life. Mrs. Hope's sister, Annie J. Thompson, died February 19, 1937, leaving to survive her two children, Helen Thompson Theobald and Lillian Pennell Thompson Walls. Mrs. Hope's niece, *Helen Theobald,* died January 16, *1942,* leaving to survive her four children: Dorothy Theobald Poorman, Herbert Pennell Theobald, Frederick Thompson Theobald, and B. Franklin Theobald. *B. Franklin* Theobald died on May 21, *1952,* without children or issue. Mrs. Hope's niece, *Lillian* Pennell Thompson

---

\* Under the terms of a spendthrift trust.

*Walls,* died August 28, *1958,* without children or issue.

The lower Court awarded ¼th of the principal of Lillian Walls' trust to Herbert Pennell Theobald, ¼th to Frederick Thompson Theobald, ¼th to Dorothy Theobald Poorman, and ¼th to the executor of the will of B. Franklin Theobald, Deceased.

The question involved in this appeal is whether the Orphans' Court erred in awarding a ¼th share to B. Franklin Theobald's executor, when B. Franklin had survived his mother but predeceased his Aunt Lillian Walls. The lower Court awarded this ¼th share to the executor of B. Franklin under the theory that B. Franklin had a vested instead of a contingent interest therein.

Mrs. Hope's trust for her niece Helen Theobald and her trust for her niece Lillian Walls were, in all material respects, exactly the same and were somewhat complicated. With respect to the trust for Helen Theobald, Mrs. Hope directed her trustees, after Helen's death, to pay the net income to Helen's "children who shall then be living and the issue of any such as shall then be deceased, in equal parts and shares, . . . until the arrival of the youngest child of my said niece at the full age of twenty-one years. And from and immediately after the death of my said niece and the arrival of her youngest child at the full age of twenty-one years, then and in such event I do give devise and bequeath the principal of the trust estate of my said niece to each and every her child and children who shall *then be living** and the issue of any such as shall then be deceased per stirpes and not per capita."

Helen Theobald had four children, each of whom survived her, and all of them were living when her youngest child attained the age of twenty-one years. The principal of the Helen Theobald trust was there-

---

* Italics throughout, ours.

upon paid and distributed in four equal shares to Helen's four children, Dorothy Hope T. Poorman, Herbert Pennell Theobald, Frederick Thompson Theobald, and B. Franklin Theobald. B. Franklin survived his mother, but predeceased his aunt, Lillian P. T. Walls, who, we repeat, died August 28, 1958, without issue. The executor of the will of B. Franklin was awarded by the Orphans' Court, we repeat, a ¼th interest in the principal of Lillian Walls' trust.

The Lillian Walls' trust and the Helen Thompson Theobald trust each contained the following additional provision:

"Should however my said niece die without leaving any child children or issue her surviving, or should said child or children all die in their minority, then and in such an event I do give devise and bequeath the principal of her said trust estate to my said trustees to be held by them In Trust for my said sister Annie J. Thompson and my said niece Helen Thompson Theobald upon the same uses and trusts as are herein expressed for them concerning their share in my said residuary estate. Provided, however that in no event shall any husband of my said niece receive any portion of my estate."

The pole star in the interpretation of every will is the intention of the testator. This intention is to be determined from the language of his entire will construed in the light of the circumstances surrounding him when he made it. "In determining the testator's intention—if no uncertainty or ambiguity exists—his meaning must be ascertained from the language of his will; it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words: Conner's Estate, 346 Pa. 271, 29 A. 2d 514; Ludwick's Estate, 269 Pa. 365, 112 A. 543":

*Britt Estate,* 369 Pa. 450, 454-455, 87 A. 2d 243. See to the same effect: *Beisgen Estate,* 387 Pa. 425, 430, 128 A. 2d 52.

In *Bald Estate,* 385 Pa. 176, 122 A. 2d 294, the Court, quoting from *Dunlap Estate,* 381 Pa. 328, 331, 112 A. 2d 349, said (page 181) : " 'The pole star which the Courts seek to ascertain in every will is the testator's intent . . . "When the intention of the testator can be ascertained by an examination of his entire will . . . 'technical rules or canons of construction are unnecessary . . .' " : Edmunds Estate, 374 Pa. 26, 97 A. 2d 75'.

" ' " ' . . . it is only where the intent is uncertain or the language ambiguous that such canons should be resorted to : Haydon's Estate, 334 Pa. 403, 6 A. 2d 581; Snyder Estate, 359 Pa. 138, 58 A. 2d 178; Walker's Estate, 344 Pa. 576, 26 A. 2d 456' : Britt Estate, 369 Pa. 450, 455, 87 A. 2d 243." ' : McFadden Estate, 381 Pa. 464, 112 A. 2d 148."

Mrs. Hope provided that if her niece Lillian died without leaving any surviving child or issue "then and in such an event I do give devise and bequeath the principal of her said trust estate to my said trustees to be held by them In Trust for . . . my said niece Helen Thompson Theobald upon the same uses and trusts as are herein expressed for [her] concerning [her] share in my said residuary estate." Mrs. Hope made no gift by this paragraph to Helen's children or issue—surviving or otherwise—or indeed to her niece Helen. Instead she clearly gave the principal of Lillian's trust to Mrs. Hope's trustees "to be held by them in trust . . . upon the same uses and trusts as are herein expressed for [Helen] concerning [her] share in my [Mrs. Hope's] said residuary estate." It would seem therefore, at least at first blush, as if the language of Mrs. Hope's will gave the principal of Lillian's trust to Trustees to be held upon the same trusts and to be paid

to the same persons and upon the same terms and conditions as were provided for in Helen's trust.

Since Helen's son, B. Franklin, survived his mother and was living when Helen's youngest child attained the age of 21 years, B. Franklin's interest in what may be called his mother's trust, became vested at that time. If he had died before Mrs. Hope's trustees had actually paid him his ¼th share of the principal of his mother's (Helen's) trust, his estate would of course have been entitled absolutely to ¼th of the principal of Helen's trust estate, and therefore of ¼th of Lillian's accrual share.

This interpretation of the language of Mrs. Hope's will is buttressed by the authorities relating to or governing vested and contingent interests. The law as to vested and contingent interests is well settled; at times it is difficult of application and sometimes it appears as if the cases were not entirely harmonious in their application of the rule. If resort be had to rules of construction, and this is done only when a testator's intent is not clear, B. Franklin, even though dead, acquired a vested interest in ¼th of *Lillian's* trust principal.

In *Bald Estate*, 385 Pa., supra, the Court further said: ". . . 'Moreover, if it is not clear from the language of the will whether the remainder is vested or contingent then as Mr. Justice LINN said in Weir's Estate, 307 Pa. 461, 468, 469, 161 A. 730, "it is necessary to keep in mind the rule 'that an interest is to be construed contingent only when it is impossible to construe it as vested': Rau's Est., 254 Pa. 464, 98 Atl. 1068; that the intention to create a contingent interest 'should appear plainly, manifestly and indisputably': McCauley's Est., 257 Pa. 377, 101 Atl. 827 . . . . In Marshall's Est., supra, it is said: 'The law leans to vested rather than to contingent estates, and the pre-

sumption is that a legacy is vested: Carstensen's Est., 196 Pa. 325 [46 Atl. 495]; Tatham's Est., 250 Pa. 269 [95 Atl. 520]; Neel's Est., 252 Pa. 394 [97 Atl. 502]; Rau's Est. [supra], . . . .' " ' "

In *Newlin Estate,* 367 Pa. 527, 80 A. 2d 819, the Court said (page 533) : " '. . . If there is *a present right* to a future possession, though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate' : [McGlinn's Estate, 320 Pa. 389, 393, 182 A. 495]; McCauley's Estate, 257 Pa. 377, 382, 101 A. 827; Reed's Estate, 307 Pa. 482, 484, 161 A. 729."

In *Rubicam's Estate,* 48 Pa. D. & C. 486, Judge HUNTER aptly said: "We construe this language to mean that the accruing shares shall pass to testator's other children and their issue subject to the same limitations as their original shares. If the original shares had vested in issue, then accruing shares also were vested. In other words, the intention of the testator was not to make new gifts to children and issue, subject to new conditions and contingencies, but merely to augment or enlarge the original gifts. See McGlinn's Estate, 320 Pa. 389."

Appellants contend that B. Franklin's executor is not entitled to a ¼th interest or to any interest in the principal of Lillian Walls' trust, for three reasons: (1) The Pay and Divide Rule shows that the gifts to the grandchildren were contingent; (2) Mrs. Hope desired and intended the trusts which she created to be paid only to her nieces and their children and issue, since she expressly "Provided, however that in no event shall any husband of my said niece receive any portion of my estate"; and (3) That it would be anomalous, if not absurd, to hold that Mrs. Hope intended the estate of a grandnephew to share in her niece Lillian's trust principal, when the grandnephew died before Lillian.

The answer to appellants' first point is two-fold: First, this Court abolished the Pay and Divide Rule in *Dickson Estate,* 396 Pa. 371, 374, 152 A. 2d 680; secondly, the Pay and Divide Rule, even if it were still in existence, would be inapplicable to the language of Mrs. Hope's will. Appellants' second and third points raise close questions of interpretation which can only be resolved by our construction of the meaning and intent of Mrs. Hope as expressed in the language of her entire will.

We believe that the Orphans' Court correctly interpreted Mrs. Hope's will.

Decree affirmed; the parties to pay their respective costs.