## Heaton Estate

The facts appear from the following excerpts from the adjudication of SHOYER, J., Auditing Judge.— This trust arises under the will and codicil, a copy of each of which is hereto annexed, of Augustus Heaton, who died March 20, 1900, whereby testator gave the residue of his estate to his trustee, in trust, with direction that the income be divided into two parts, one of which should be paid to his daughter, Rosalie H. Tows, for life, and the other share of income, after paying annuities of $1,000 each to his three grandsons, Augustus Heaton, Harry Heaton and Perry Heaton, to be paid to his son, Augustus G. Heaton, for life. Upon the death of his son, the portion of the income paid to him during his lifetime was directed to be divided equally among his three named sons in quarter-yearly payments for their respective lives. Upon the death of testator's daughter the income which she was entitled to receive during her lifetime was directed to be paid to her son, Ferrars Heaton Tows, for life.

At the death of testator's grandchildren respectively, leaving issue, the respective shares of the principal of the trust of which they should have been receiving or entitled to receive the income were directed to be transferred to the children of said grandchildren or their issue, respectively, by representation. If any of testator's grandchildren should die without issue them surviving, then and in that event the principal of the share of such grandchild was directed to augment the shares of his or their brothers and sisters, if any, or their issue, subject to the same trusts, or in default of such brothers and sisters, respectively, or their issue, then and in that event the share of such grandchild was directed to be paid to the persons "who would be entitled thereto as my heirs and next of kin respectively under the intestate laws of the State of Pennsylvania in force at the time of this writing."

The fund being here accounted for was awarded to the accountant by the adjudication of Stearne, J., dated June 9, 1936, in trust for Ferrars H. Tows, whose mother, Rosalie H. Tows, daughter of decedent, had died September 14, 1919, survived by one child, the said Ferrars H. Tows, and no other children or issue of deceased children.

This account was filed because Ferrars H. Tows died June 10, 1958, unmarried and without issue. The trust has terminated. Ferrars left a will upon which letters testamentary were granted at Litchfield County, Connecticut, to Fay Jordan, executrix. Hereto annexed is the waiver by the personal representative of an accounting of income for the period prior to March 17, 1958. Also annexed are the short certificate and affidavit as required by rule 69.2 (e).

Accountant's statement of proposed distribution and the notice to the parties in interest raises the question as to whether the fund now distributable should be paid to the persons entitled as heirs or next of kin of testator under the intestate laws of Pennsylvania in force at the time of the execution of the will, which is dated February 27, 1900, or whether the Intestate Law in force in 1900 is to be applied to the factual situation existing on the death of the life tenant, Ferrars H. Tows, on June 10, 1958.

The statement points out that testator, Augustus Heaton, was a widower at the time of his death and he was survived by his two children, Rosalie H. Tows and Augustus H. Heaton. And, if the heirs are to be determined as of the date of Augustus Heaton's will, February 27, 1900, or the date of his death, March 20, 1900, the principal of this trust would now be distributable to the estates of his two children, Rosalie G. Tows and Augustus G. Heaton, and to those entitled to take by devolution through those estates.

Testator's daughter, Rosalie H. Tows, died September 14, 1919, leaving a will upon which letters testamentary were issued in Litchfield County, Connecticut, to her son, Ferrars H. Tows, executor and residuary legatee named therein.

Augustus G. Heaton, testator's son, died October 11, 1930, leaving to survive him his wife and three children (named in his father's will), viz: Perry Heaton, Harry Heaton and Augustus Heaton. The three last mentioned grandchildren of testator are all deceased, the last being Perry Heaton, who died June 15, 1954. By adjudication of Saylor, J., dated January 28, 1957, the balance of the original share of Augustus G. Heaton was distributed to John G. Heaton, Mary G. H. Villemin and Caroline Heaton O'Connor, children of Harry Heaton, testator's grandson, who died September 21, 1933.

Augustus G. Heaton, testator's son who died in 1930, left a will, upon which letters testamentary were issued at West Palm Beach, Florida, to Mrs. John S. Moran and later to John G. Heaton who, upon becoming of age, qualified as coexecutor. By his will, a copy of which is annexed, Augustus G. Heaton disinherited his wife, Mary Adelaide Griswold Heaton, who survived him, stating in item fourth of his will that she had deserted him for nearly 50 years. He bequeathed his residuary estate to his three grandchildren, Mary G. Heaton, now Villemin, John Goodyear Heaton and Caroline Heaton, now O'Connor, absolutely and in fee.

The statement of proposed distribution further recites that Mary Adelaide Griswold Heaton, wife of Augustus G. Heaton, never appeared in the probate proceedings involving her husband's estate neither to contest the provisions of the will disinheriting her, nor to assert any dower interests.

Further, that Mary G. Heaton Villemin, John Goodyear Heaton and Caroline Heaton O'Connor, all of whom are living, are the sole heirs and next of kin of decedent, Augustus Heaton, *if the date of death of Ferrars H. Tows on June 10, 1958,* is taken to be the date on which the heirs of testator are to be determined.

### Question of Distribution

When the testator wrote his will and codicil on February 27, 1900, and March 3, 1900, respectively, and when he died on March 20, 1900, the Intestate Act of April 8, 1833, was still in force. That act insofar as is here pertinent provides that if the intestate should be survived by children, but no other descendants being the issue of a deceased child, the estate should descend to and be distributed among such children. The heirs of an intestate survived only by great-grandchildren are, under that act, the great-grandchildren to whom the estate would be equally distributed.

Therefore, if the heirs of decedent are to be determined as of the date of the will or of the date of decedent's death, 1900, the principal of the trust would be now distributable to the estates of decedent's two children, Rosalie H. Tows and Augustus G. Heaton, and by devolution through those estates, i.e., one half to the estate of Ferrars H. Tows, and by his will to Mrs. Fay Jordan, residuary legatee thereof, and the other half under the will of Augustus G. Heaton, one sixth to each of his three grandchildren. This distribution is suggested by the accountant and is contended for by Mr. Latta and his associates.

Mr. White, on behalf of testator's great-grandchildren, contends that the intestate law in effect in 1900 is to be applied to the factual situation existing on June 10, 1958, when the trust terminated with the

death of Ferrars H. Tows, and the trust corpus is to be distributed to testator's three great-grandchildren.

Upon the death of Ferrars in 1958, the principal of this trust from which he had been receiving income became distributable under the will which provided:

"4. At the death of my grandchildren respectively, leaving surviving issue, I direct the respective shares of the principal of my trust estate of which they shall have been receiving or entitled to receive the income, to be transferred to the children of my said grandchildren, or their issue respectively by representation, such children, or their issue taking their parents' share. If any of my said grandchildren shall die without issue them surviving then and in that event I direct the principal of the share of which such grandchild shall have been receiving the income to continue and thus augment the shares of his or their brothers and sisters if any or their issue subject to same trusts, and failing such brothers and sisters respectively or their issue, *then and in that event I direct and order the share of such grandchild to be paid, transferred and conveyed by my said trustees to the persons who would be entitled thereto as my heirs and next of kin respectively under the intestate laws of the State of Pennsylvania in force at the time of this writing.*" (Italics supplied.)

As noted earlier, the one half of the residuary estate which had been held in trust for decedent's son and his issue was distributed outright by the adjudication of Saylor, J., in 1957, to the son's same three grandchildren, who now claim the entire other one half of the trust. In connection with that prior distribution, Perry Heaton, decedent's grandson, had died in 1954, without issue, and these three great-grandchildren took that share of corpus as the issue of Perry's brother Harry, who died in 1933, under the clause just preceding the one underlined above.

In the opinion of the auditing judge the plain, clear language of the will as well as the applicable rule of construction compel the conclusion that testator's heirs and next of kin are to be determined as of 1900, the date of his will, which was also the date of his death, rather than as of 1958, when the trust expired.

Prior to the act of June 29, 1923, P. L. 914, a gift to the heirs or next of kin of a testator was construed to refer to those who were such at the time of testator's death, unless a different intent was plainly manifested by the will and, if the tenant for life were such heir he would not be on that account alone excluded: Hunter's Pennsylvania Orphans' Court Commonplace Book, Second Ed. Vol. VI, p. 176; Buzby's Appeal, 61 Pa. 111; Thompson Trust, 363 Pa. 85; and other cases there cited. This rule of construction was reversed by the act of 1923, supra, but in section 2 thereof was expressly made inapplicable to wills of persons dying or to deeds delivered prior to December 31, 1923.

Thus, in Thompson Trust, 363 Pa. 85 (1949), the Supreme Court stated, p. 90:

"In the present case the sole fact that the settlor transferred the remainder *to his own heirs* [italics supplied] following the death of the life tenant is not a sufficient indication of intent to rebut the presumption. There must be more than that, otherwise all grants and devises to heirs after the death of the life tenant would be to heirs *determined as of that date.* This would make the canon of construction and above-cited cases meaningless."

The very able counsel for the parties discuss in their respective briefs, testator's use of the word *then* in the phrase "then and in that event". Counsel for the great-grandchildren contends that "then" was here used as an adverb of time. They cite Peirce Trustees v. Hubbard, 152 Pa. 18 (1892) ; Wood v. Schoen, 216 Pa. 425 (1907) ; Dailey's Estate, 268 Pa. 379 (1920).

In each of these cases the word "then" was used as an adverb of time and the heirs or next of kin were ultimately determined as of the death of the life tenant. However, on examination, those cases are inapposite. In Peirce Trustees v. Hubbard, supra, testator left his estate in trust with the income payable to his daughter and ". . . in case of her death without issue or issues of her children, *then* reversible to my . . . consanginary heirs." (Italics supplied.)

In Wood v. Schoen, supra, the gift was: "the other two-thirds thereof to such child or children as I may leave, and the issue of such child or children as may be deceased. And in default of such child or children or issue, then to those who *would then be entitled* thereto under the intestate laws of this state." (Italics supplied.) As pointed out by the Supreme Court the gift was to these who "would then be entitled". The adverb *then* fixed the time when the persons entitled were to be *ascertained*.

In Dailey's Estate, supra, testatrix provided: "after the death of my son, Frank Kennedy Dailey [who enjoyed the income for life] I will and direct that the one-half of my estate *then* remaining to be given to my sister, Josephine Kennedy, and the balance to be divided under the intestate laws of Pennsylvania." The Supreme Court held that the word "then" was there used as an adverb of time and that it was testatrix's intention, as disclosed by her will, to devise the remainder to those who would be her heirs at the expiration of her son's life estate and not to those who were her heirs at the time of her death.

On the other hand, in Stewart's Estate, 147 Pa. 383, Fitzpatrick's Estate, 233 Pa. 33, and Buzby's Appeal, 61 Pa. 111, the word *then* was so placed as to show that it was used as a conjunction.

In Buzby's Appeal, supra, the bequest of the remainder was to the life tenant's children or issue "and

for want of such child or children or lawful issue, then in trust for the use and behoof of my right heirs forever . . ." In holding that the will did not express a contrary intent, the Supreme Court stated, p. 116:

"Nor will the use of the word *then*, as introductory to the bequest or devise over after the death of the tenant or legatee for life, prevent the general rule from applying unless it is so used as clearly to indicate that the next of kin, or heirs living at the death of the tenant for life, are intended by the testator. . . . We see nothing in this will, or in the circumstances of the case, which qualifies the natural meaning of the words, and which clearly shows that the testator intended to limit the estate to those who would be his right heirs at the death of his son William. Certainly the use of the word *then*, as introductory to the limitation, does not indicate any such intention. The limitation is in these words: 'And for want of such child or children, or lawful issue, then in trust for the use and behoof of my right heirs for ever.' Obviously the word *then* is not used in this clause as *an adverb of time, but as a conjunction*, signifying in that case, in that event or contingency. If this be its meaning, there is nothing to prevent the general rule from applying, and the words must be construed as referring to the heirs of the testator at the time of his death." (Italics supplied.)

It is apparent that the word *then* in the instant will occupies the same position as it did in the referred-to portion of the will in the Buzby case, and may be construed as a conjunction.

The great-grandchildren here complain that such construction would be tantamount to reading the provision as though the settlor had written "in that event, in that event," thereby giving no independent meaning to the word "then" and treating it as though it were surplusage, and thereby violating the universal rule

that requires in construing a will that effect be given to every word and every part of it where possible.

However, in Fitzpatrick's Estate, 233 Pa. 33, the remainder gift to the life tenant's children was followed by the words *"but in the event* that no children survive her *then* I give and bequeath the same to my legal heirs." The Supreme Court in construing the gift held that even though the condition had already been expressed as to when the remainder was to pass by the words "in the event", the court interpreted the word "then" as signifying event rather than time. The court there stated: (p. 35)

"In the construction of wills there are instances in which the word 'then' as used in connection with a devise of property has been held to be an adverb of time, but this is not the general rule, which is, that it does not point to the time but indicates the event. In the case at bar we are clear that it refers to the event upon the happening of which the legal heirs take, and not to the time when their right to take begins."

In Nass' Estate, 320 Pa. 380, testator provided that at a daughter's death the principal of the half share be paid to her children and that if any daughter should die . . . "without leaving lawful issue, *then and in such case* I give . . . the said part or share . . . unto my surviving child or children. . . ." One of the daughters died without leaving any children. She was survived by one sister, who claimed that she was the sole "surviving child or children" of testator and was therefore entitled to the entire share of principal previously held for her sister. The Supreme Court rejected her claim and held that the words of survivorship refer to testator's death unless a contrary intent appears in the will and that the words "then and in such case" were not sufficient to evince the contrary intent. The court there stated, p. 384:

"The mere fact that testator employed the words 'then and in such case' is not of itself sufficient evidence of an intention to bar application of the ordinary canon of construction. The general rule regarding the effect of the word 'then' was stated in Fitzpatrick Est., 233 Pa. 33, to be indicative of the time when those entitled were to take, rather than the time to determine who were those parties. See also Buzby's App., 61 Pa. 111, 116; Stewart's Est., 147 Pa. 383. The same construction applies to the words used in the instant case."

In Metzgar Estate, 395 Pa. 322, the Supreme Court again made reference to the interpretation of the word 'then' and stated at p. 327:

"Our courts have interpreted 'then' in various ways depending upon its use and position in the will and the purpose for which its interpretation is sought: . . ."

It is plain to the auditing judge that the word "then" as used in the instant will, having regard to its position and use, makes reference to the *condition* that would bring about the passing of the remainder; it has no bearing on *when* the heirs or next of kin are determined. It does not show an intent that the heirs or next of kin be determined at the time of the life tenant's death.

Counsel for testator's issue next point to the direction that the remainder is "to be paid, transferred and conveyed . . ." as showing a contrary intent. They claim that this language brings the case within the "Pay and Divide" rule, citing Wilson Estate, 369 Pa. 583, and Edmunds Estate, 374 Pa. 22. Be that as it may, our Supreme Court recently, in Hope Estate, 398 Pa. 470, at p. 477, stated: ". . . this Court abolished the Pay and Divide Rule in Dickson Estate, 396 Pa. 371. . . ."

Counsel contends, finally, that the gift in the conditional tense "to the persons who *would* be entitled

. . ." (emphasis supplied) shows the contrary intent, that the heirs or next of kin are to be determined in the future—at the time of the life tenant's death. This same contention was raised and rejected by our Supreme Court in Whiteside's Estate, 302 Pa. 452, pp. 454-55.

What was said by our Supreme Court in Hope Estate, supra, is particularly pertinent here. The court there stated, pp. 473-74:

"The pole star in the interpretation of every will is the intention of the testator. This intention is to be determined from the language of his entire will construed in the light of the circumstances surrounding him when he made it. 'In determining the testator's intention—if no uncertainty or ambiguity exists—his meaning must be ascertained from the language of his will; it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words: [citations].' "

The remainder here in issue vested at testator's death, one-half in his son and one-half in his daughter, and passed through them to their respective heirs and next of kin, and it will be so awarded.

\*      \*      \*      \*      \*

And now, November 22, 1960, the account is confirmed nisi.

*Thomas S. Weary, William White, Jr.*, and *Duane, Morris & Heckscher*, for exceptants.

*Charles S. Port* and *Cuthbert H. Latta*, contra.

## Opinion
### Sur Exceptions to Adjudication

BOLGER, J., January 13, 1961.—After exhaustively reviewing the adjudication and the splendid briefs of counsel, we are satisfied that testator's intention to

keep his estate within his blood line very curiously stops with the termination of the trust and that there is nothing within the four corners of the will to demonstrate that testator clearly and convincingly intended that the remainder over, after the life estates, should vest in the heirs and next of kin as of that date. The cases cited by the learned auditing judge holding that the phrases "then and in that event" and "to the persons who would be entitled thereto as my heirs and next of kin . . ." refer to the event and not to the time of vesting, are apposite and controlling.

For these and for the other reasons so soundly stated by the learned auditing judge, the exceptions are dismissed and the adjudication confirmed absolutely.