## Porter Estate

92

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Drew J. T. O'Keefe,* U. S. Attorney, *James Lightfoot,* Assistant U. S. Attorney, and *Charles F. Nahill,* for exceptants.

*Seth W. Watson, Jr., Peter M. Mattoon, H. Ober Hess* and *Stanhope S. Browne,* contra.

BOLGER, J., June 11, 1965.—Testator gave his residuary estate in trust to pay the income to his four children for life and directed: "If any one of the said children shall die without leaving lawful issue him or

her surviving, then the share of the income which had been payable to such child shall be divided among my surviving children. Upon the death of any one of the said children leaving lawful issue him or her surviving, then the share of my estate upon which he or she has been receiving income shall be payable to and distributable among the surviving issue of such deceased child, in equal parts or shares, the children of any deceased children taking their parents' share by representation."

All of the children survived him as well as his widow. All are now deceased and the trust has terminated. The first to die was Charles Porter, Jr. He died in 1914 without leaving children or issue of deceased children. Income thereafter was paid in three equal shares.

Sarah Porter Jenks died in 1940, survived by a son and a daughter to whom one-third of principal was then distributed.

Emma Porter Melcher died in 1962, and at that time one-half of principal was distributed to her issue per stirpes.

The fourth and last child, Elva Porter, died November 12, 1963, unmarried and without issue.

All four children died testate and made various dispositions of their residuary estates.

The auditing judge awarded the principal from which Elva had been receiving income one-half to the stirpes of Sarah and one-half to the stirpes of Emma as modified by an agreement among them.

The Government of the United States and the Commonwealth of Pennsylvania are the only exceptants to the adjudication. They both claim that the testator died intestate as to the share held for Elva's benefit because the testator failed to provide for the contingency which has occurred, viz., the death of the last survivor of his four children without issue. It is claimed that Federal Estate and Transfer Inheritance taxes must be paid on the devolutions through the estates of the four children

and the wife of the testator, all of whom were living at the time of his death. Walton Estate, 409 Pa. 225, Verner Estate, 358 Pa. 280, and Berger Estate, 360 Pa. 366, are cited as authority.

In ascertaining whether there is an intestacy of this share of the trust, we must determine testator's intention by putting ourselves in his armchair as of the time of his death and review the will from its four corners in order to ascertain his intention which is the pole star in the construction of wills: Hope Estate, 398 Pa. 470. In Houston Estate, 414 Pa. 579, 586, the court quoted from Lewis Estate, 407 Pa. 518, which in turn quoted from Burleigh Estate, 405 Pa. 373, as follows: "It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting, or the testator's intent is for any reason uncertain: Dinkey Estate, 403 Pa. 179; Pruner Estate, 400 Pa. 629; Wanamaker Estate, 399 Pa. 274; Hope Estate, 398 Pa. 470." Later, on the same page, the court quoted from Collins' Estate, 393 Pa. 519: "The testator's intention is the pole star in the construction of every will and that intention must be ascertained from the language and scheme of his (entire) will (together with the surrounding facts and circumstances); it is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words", citing cases.

These as well as other time-honored and hornbook principles were enunciated in Vandergrift Estate, 406

Pa. 14, 26. Other rules are listed as follows: "A will must be so construed, if possible, as to give effect to every word employed by the testator and a construction which renders any of the words nugatory and futile must be rejected. . . . There is a presumption that: 'One who writes a will is presumed to dispose of all of his estate and not to die intestate as to any portion thereof. If possible to do so, a will must be construed to avoid an intestacy." However, in De Silver's Estate, 142 Pa. 74, the following language of Judge Penrose was approved (pp. 75, 76): "The rights conferred by the intestate laws are only taken away by a will which effectually disposes of the entire estate of the decedent; and, while a construction is not to be adopted, if it can be avoided, which will lead to an intestacy, interpretation is never to assume the proportions of reformation." It was further stated in Wainwright Estate, 376 Pa. 161, 165, 166: "There is a presumption testator intends to dispose of his whole estate. Such presumption, however, is met by an equally potent presumption that an heir is not to be disinherited except by plain words or necessary implication . . . . Neither presumption, however, can be permitted to defeat the intention of the testator which is expressed in apt words or appears by clear implication." Since it is conceded that Porter did not use express or apt words to dispose of the share of the trust in question, it remains to be seen whether he makes such disposition by "clear implication."

Another important basic applicable principle is that the presumption that a legacy is intended to be vested applies with far greater force where a testator is making provision for a child or grandchild than where the gift is to strangers or collateral relatives: 6 Hunter's Pennsylvania Orphans' Court Commonplace Book 138, Vested and Contingent Interests 1 (b); Brumbach Estate, 373 Pa. 302; Hope Estate, supra; Houston

Estate, supra. Tracking down that elusive thing called the testator's intention, especially his plan or design, is always a prime objective.

Although we must construe this will as of the date of testator's death, as happens infrequently, the history of this trust points to a just solution of our problem. If the exceptants are correct in their assertion that there was no gift over of principal upon the death of Elva, the last life tenant, neither was there a gift over of the principal of the share of Charles Porter, Jr., when he died in 1914, unmarried and without issue. However, as above noted, the share of principal from which he was enjoying the income was distributed ratably among the children of Sarah and Emma respectively when those two children of the testator died.

It is mainly in cases where there is a complete void, patent omission, where no attempt appears to have been made by a testator to dispose of a share of his estate whether because he completely forgot about it or was indifferent to it, that an intestacy will be declared to exist. Such patent omissions appear plainly in Verner Estate, supra, and Berger Estate, supra, upon which exceptants rely. It is conceded that the testator did not expressly provide for a gift over of the principal of this trust, but to hold that he did not make an implied gift over of such principal, we would have to take the paragraph in question out of the context of the whole will. We, therefore, hold Verner Estate and Berger Estate inapposite.

Porter's testamentary plan or scheme of distribution is clear. He confined his bounty after a $100,000 gift to his wife, to his children and his grandchildren with no indication whatsoever of any intention that any share of this estate would go beyond his blood line. There is no reference to spouses of his children or grandchildren, or to their heirs. He knew how to dispose of income and how to dispose of principal,

although at times in inexact terms. He intended in our opinion to dispose of his entire estate. It is our conclusion that the will, construed as of the date of his death, gave to his then grandchildren, a class which might well open thereafter, vested interests in the shares of principal of their respective parents and contingent interests in the principal of the shares of the testator's other children who might die childless. Finally and most cogently, when the parent or parents of such grandchildren would die, such grandchildren would then acquire vested interests in the shares of testator's other children who were then childless and who might die childless thereafter, subject to being divested by such childless children dying leaving children: Vandergrift Estate, supra, Straus Estate, 351 Pa. 136; Hinkson v. Lees, 181 Pa. 225; McGlinn's Estate, 320 Pa. 389.

Mr. Porter could not and did not when he made his will anticipate the order of death of his children nor whether the first, second, third, last or all of them would die childless. However, we can reasonably assume that he had such a possibility in mind because he stated in his will "If *any* one of the said children shall die without issue". In Vandergrift Estate, supra, where the facts parallel those in the instant case, the last of five children to die was childless. Therein the testator stated: "If any of my said sons and daughters should die" then the survivors were to take. The court there held that "surviving" was equivalent to "other." Therefore, when the last child died childless, that share of the trust was awarded to the children of deceased children. No intestacy was declared.

In Vandergrift Estate, supra, testator made an extensive effort to provide expressly for every contingency in the disposition of both income and principal among his five children to whom he gave the income of several trusts for life, remainder to their

respective surviving children, and upon the death of a child dying without children, income of such share to his "surviving" children and remainder to their children per stirpes. He did not, however, provide expressly for a gift of the share of principal should the last child to die be childless. The Supreme Court held that it was an implied gift of principal of such share to the children of deceased children and negatived a possible intestacy.

As Justice Jones stated in Vandergrift Estate, supra, page 28: "Can it then be said that this testator in this carefully drawn will omitted the contingency of the *last* living child dying without issue or child? We think not. Bearing in mind that by the employment of the word 'any' testator clearly contemplated the last to die as well as the first to die, to find an intestacy we must reform the will and remove from the will the devise of the share of the last dying child to brothers and sisters and ascribe to testator the intent to have excluded this contingency if the contingency arose on the death of the *last* child. We would have to reform this paragraph of the will to read 'if any of my said sons and daughters except the last to die'. The only alternative to give effect to that which was clearly the testamentary intent is to read the word 'surviving' as 'other' and for such construction there is ample precedent."

In the Porter Will we observe an economy of language as distinct from the detailed provisions in Vandergrift Estate, supra. To us the first significant thing is the order of the gifts of income and of principal. Here, testator in deft, broad strokes outlined his wishes. After the gift of income to his several children and of gifts over of income upon the death of any one of them who died childless to the survivors, he first disposes of the shares of principal of those dying without issue. Not until then does he dispose

of the shares of principal of those who die leaving children and he leaves to such grandchildren the shares of principal of which their parent had been receiving income. In our opinion, this latter clause serves as a residuary of all principal interests. He conveys to us his testamentary intent that he should not die intestate as to any part of his estate and that the share of the trust before us, being that of a childless child, was intended by him to descend to the children of his deceased children.

Does the language of the will "upon the death of any one of the said children leaving lawful issue him or her surviving, then the share of my estate upon which he or she has been receiving income shall be payable to and distributable among the surviving issue of such deceased child, in equal parts or shares, the children of any deceased children taking their parents' share by representation," restrict the interests of grandchildren to the shares of principal from which their parents respectively were receiving income, such parents necessarily never having received any income from the share now before us? Similar phraseology appears in Wolstenholme Estate, 26 D. & C. 2d 615. There this court characterized the language as clumsy and inept. If followed literally, it would have negatived the plain testamentary intent of the will. Citing, inter alia, Irwin Estate, 304 Pa. 200, and Clark Estate, 359 Pa. 411, we held the language to be obscure and ambiguous, but we imputed to it such a meaning as under the circumstances conforms to the testator's probable intention and is most agreeable to reason and justice, one that does not lead to an unnatural or inequitable result. We so hold in the instant case. The language of this will does not require that we construe the testator's language to exclude the gift of this fund from his grandchildren. The clear implication is to the contrary: Beisgen

Estate, 387 Pa. 426. The question is whether in stating that grandchildren should take the shares of principal from which their parents were receiving income was inclusive or exclusive. In our opinion, testator did not intend that such grandchildren should be excluded from inheriting the shares derived otherwise than from those in which their parents enjoyed the income, but should include the shares of testator's children dying childless after their parent. To exclude them would do violence to the plain testamentary design by giving to "surviving" a strictly limited construction instead of the liberal construction arrived at by construing "surviving" as "other" as above quoted. As noted by Justice Jones in Vandergrift Estate, supra, we would have to reform this will and add language which would negative testator's fundamental intention. On the other hand, we hold that to permit the grandchildren to inherit the share before us is a logical conclusion as well as conforming to the testator's testamentary intent.

Upon the authority principally of Vandergrift Estate, supra, and of the other cases cited hereinbefore, we must sustain the award of the principal of this trust to the children and descendants of deceased children of the testator per stirpes, subject to the agreement which such descendants entered into prior to the death of the present life tenant, and dismiss the claim of the exceptants that the testator died intestate as to the share in question. Just as the Supreme Court in Vandergrift Estate, supra, held that a reformation of the will would be necessary to sustain an intestacy, we likewise hold that such reformation would be necessary in the instant case to sustain the exceptants' position. This we cannot and will not do.

The exceptions are dismissed and the adjudication is confirmed absolutely.