SATTERTHWAITE, P. J.,
— The final account of Girard Trust Bank, formerly Girard Trust Com Exchange Bank, and previously Girard Trust Company, trustee for Theress Ravenel Ashman and *365 Theress Ravenel Smith Ashman for life under Rem Ninth of the will of said decedent, was presented to the court for audit, confirmation and distribution of ascertained balances on December 1,1969, as advertised according to law. Said audit was duly continued in open court to January 5, 1970, and a further audit hearing was held on June 11, 1970. Due proof of appropriate notice thereof to all parties legally interested in said estate appears in the record. The accounting was occasioned by the death on January 30, 1969, of Theress Ravenel Smith Ashman (Gentner), surviving life tenant; the trust under the ninth item of the will has terminated and principal is distributable.
Said account has been examined and audited by the court. Balances for distribution shown thereby include principal in the amount of $486,481.90, composed of invested securities carried at $499,581.06, subject to overdraft due accountant of $13,099.16; and income in the amount of $14,863.23, composed of pre-audit distributions of $7,968.70, and the balance of $6,894.53 in cash. Said respective balances for distribution appear to have been correctly computed and stated on the accounting filed.
No additional receipts or disbursements since the accounting were suggested.
Pennsylvania transfer inheritance tax has been paid on the appraisements filed on July 28, 1934, October 11, 1934, and April 11, 1950; as per certificate of the register attached to the petition for adjudication.
Certain objections have been filed to the accounting itself as well as to the scheme of distribution proposed by the petition for adjudication. The factual circumstances involved in the latter may be first considered to provide the background and perspective for consideration of the former.
Decedent died on October 7, 1933, leaving a will *366 dated March 7,1933, whereby he provided, in summary outline, for the payment of debts and funeral expenses, the disposition of household and personal effects, tax and spendthrift clauses, a specific exclusion as beneficiaries of any descendants of a deceased brother Walter, and a request to wind up and liquidate his business interests. By the seventh item he gave $100,000 in trust to pay income for life to a nephew Edward I. Smith, Jr., with remainder upon his death to fall into the residuary estate; he further recited that in view of this provision, his said nephew being the only son of his deceased brother Edward, the descendants of the latter should be excluded from participation in the residuary estate. He similarly specifically excluded from such participation the descendants of still another deceased brother Louis.
The ninth item created the trust with the accounting and distribution of which this audit is immediately concerned. It provided as follows:
“Ninth: I give and bequeath to the Girard Trust Company . . . the sum of . . . ($500,000) ... In Trust, to pay the income monthly to Theress Ravenel Ashman for and during the term of her natural life. In further Trust, to pay the income to her daughter, Theress Ravenel Smith Ashman, for and during the term of her natural life.
“In Trust, upon the death of the survivor of the said Theress Ravenel Ashman and her daughter, Theress Ravenel Smith Ashman, to pay, assign, transfer and set over one-half of the said fund to and among the descendants then living of Theress Ravenel Smith Ash-man in equal shares, per stirpes, upon the principle of representation; the remaining one-half of said fund to fall into and become part of my residuary estate.”
This item ninth trust has now terminated. Theress *367 Ravenel Ashman, the first fife tenant, died in 1946; her daughter Theress Ravenel Smith Ashman Gentner, the succeeding life tenant, died January 30,1969. Principal is, therefore, now distributable, and the question is: to whom? As to one-half, no problem arises: such fraction is clearly given to the residuary trust. With respect to the other half, however, in view of the fact that Mrs. Gentner left no issue (descendants) her surviving, there are two alternatives: (1) such half also falls into the residue, or (2) it should be distributed to decedent’s heirs at law as though he had died intestate with respect thereto. Objectors contend for the latter position; accountant (apparently with the approval of all of the other presently ascertained parties in interest, none of whom have joined objectors) suggests the former result.
Item eleventh of decedent’s will disposes of his residuary estate upon the following trusts:
“Eleventh: All the rest, residue and remainder of my estate, real, personal or mixed, of whatsoever kind and wheresoever situate, I give, devise and bequeath to the Provident Trust Company of Philadelphia and Horace E. Smith, In Trust:
“(a) [To pay a monthly sum to a named individual for life, the annuitant now being deceased]
“(b) To divide [and pay over] the balance of the income into as many parts or shares as at each quarterly time of distribution there shall be living any brother and sisters of mine, viz, Mary E. Lee, Florence vonFriesen and Horace E. Smith, and brother and sisters of mine then dead including my deceased sister Katharine A. Smith, represented by descendants then living, (excluding, however, the descendants, if any, of my deceased brother Walter, my deceased brother Edward, and my deceased brother Louis, as herein- *368 before provided) . . . per stirpes, upon the principle of representation . . . until the death of the last survivor of my brother and sisters and of any niece or nephew of mine living at the time of my decease, at which time the principal of my estate shall then be distributed to and among the descendants then living of my brother and sisters . . . per stirpes . . . excluding as aforesaid the descendants, if any, of my deceased brother Walter, my deceased brother Edward, and my deceased brother Louis.”
Decedent apparently was unmarried and childless, being survived by the two sisters and one brother named as primary life tenants of the Eleventh Item residuary trust, as well as by three nieces, being the issue of his deceased sister Katharine also therein mentioned. Decedent also had had three other predeceased brothers, being those who themselves or their issue were excluded from participation by the will provisions above recited; two of these left sons who, although now deceased, survived the within decedent, and their respective estates would be included among his heirs at law had he died intestate. Although all of decedent’s brothers and sisters are now deceased, certain of the nephews and nieces survive and the Eleventh Item residuary trust accordingly still continues. The objectors herein are Eduard von Friesen, a nephew of decedent, being one of two sons of Florence von Friesen, decedent’s now deceased sister; and Bernhard Baron Friesen, son of Eduard.
Had the within decedent died on or after January 1, 1948, the question at hand would clearly have been governed by section 14(9) of the Wills Act of April 24, 1947, P. L. 89, 20 PS §180.14(9): The half interest in dispute would have constituted an “undisposed of ’’remainder and by express statutory direction would have been included in the residuary estate. Since de *369 cedent died in 1933, however, the Wills Act of 1917 is the statute to be consulted. Section 15(c) thereof, 20 PS §253, the comparable section pertaining to lapsed, void or revoked devises and bequests which section 14(9) of the 1947 statute replaced, contained no specific reference to “undisposed of” gifts. Accordingly, it was held in Verner Estate, 358 Pa. 280 (1948), and Berger Estate, 360 Pa. 366 (1948), in construing pre1948 wills where remainders over after the deaths of the life tenants of trusts of the residuary estates themselves had failed in part because of the absence of designated remaindermen, that the statute was inapplicable to pass such shares to the surviving residuary beneficiaries, and an intestacy resulted as to such “undisposed of” shares.
It does not follow, however, that Vemer and Berger are controlling here. In the instant case, the failure of remaindermen has occurred with respect to a particular pecuniary bequest in trust, and not as to any interest in the residue. This distinction is significant and dictates a present result contrary to that reached in the cited decisions. Compare Fox Trust, 27 D. & C. 2d 448 (1962), 12 Fiduc. Rep. 334; Weber Estate, 4 Fiduc. Rep. 72 (1953). The “residue” of a man’s estate, in testamentary language, means whatever is not specifically devised or bequeathed: it passes everything not otherwise effectively disposed of: Thaw Estate, 414 Pa. 347, 352-53 (1964). See also Zoller Estate, 373 Pa. 451, 457 (1953). Stated otherwise, a general residuary clause carries every interest of the testator, known or unknown, immediate or remote (but not mere expectancies: Braman Estate, 435 Pa. 573 (1969)), unless manifestly excluded by other provisions of the wall: Ingham’s Estate, 315 Pa. 293, 297 (1934).
There is nothing in decedent’s will which would give the slightest intimation that he intended any departure *370 from this general principle, if, indeed, he had given thought to the matter in any event. In addition to the usual rules that, if possible, a will should be construed to avoid an intestacy (Grier Estate, 403 Pa. 517 (1961)), and that a testator in drafting his will is presumed, in the absence of an indication to the contrary, to have intended to dispose of his entire estate (Farrington Will, 422 Pa. 164 (1966)), we have the specific circumstance that the within decedent expressly excluded any (or more than narrow and limited) participation in his estate by all descendants of his named three deceased brothers, which descendants would otherwise be among those qualifying as his heirs at law if an intestacy were declared. Such broad and comprehensive exclusionary provisions are significant and have been given effect to preclude participation by those intended to be so barred where they sought to qualify in an analogous context as heirs at law upon the failure of the disposition of an interest given to another: Dunlap Estate, 381 Pa. 328 (1955).
The auditing judge concludes that the entire principal now distributable should be awarded to Provident National Bank (successor to Provident Trust Company of Philadelphia) upon trusts pursuant to item Eleventh of decedent’s will, and the same may be earmarked as “Residuary Trust No. 2” for purposes of administration to facilitate certain arrangements and renunciations between and among certain of the beneficiaries thereof, matters as to which neither the court nor objectors have any interest or concern as the auditing judge understands the situation. Objection numbered 13 is hereby overruled and denied.
Objectors next complain because the court has seen fit not to appoint a guardian and trustee ad litem for minor and possibly unascertained parties who remotely may be interested in this trust and its ultimate *371 distribution. The immediate occasion for this question was a petition filed by objectors themselves asking the appointment of a guardian ad litem for the two minor children of Bernard Baron Friesen, one of objectors himself. The complete absence of any necessity or even realistic purpose to be served by such useless additional involvement and expense is quite patently illustrated by this very circumstance. These minors obviously would have the identical interest (although more remotely by two generations) as Eduard von Friesen (their grandfather) in having an intestacy declared as to a half interest in the item Ninth trust already hereinabove discussed. Conversely, their interests (as well as those of all other contingent and possible unascertained remaindermen) as theoretical future beneficiaries under the item Eleventh residuary trust are represented herein by Provident National Bank as testamentary trustee of the latter trust, a fiduciary incidentally which is entirely independent of Girard Trust Bank, the within accountant as trustee of the separate item Ninth trust. The court, therefore, believing that the interests of such parties are otherwise adequately represented, exercises its discretion, for lack of any reasonable occasion therefor, not to appoint a guardian or trustee ad litem. See section 983(2), incorporating section 704, of the Fiduciaries Act of April 18, 1949, P. L. 502, 20 PS §320.983(2) and §320.704; Supreme Court Orphans’ Court Rules, sec. 12, Rule 4; LaRocca Estate, 431 Pa. 542, 549-50 (1968). Compare Curry Appeal, 390 Pa. 105, 109 (1957). Objection no. 14 is hereby overruled and denied.
Objectors’ remaining complaints go to their criticism of accountant’s investments of trust assets over the years. Unfortunately, while we disagree with accountant’s contention that they lack standing even to be heard in this connection, their position is uncertain *372 and ambiguous and founded to a substantial degree upon factual allegations which are beyond the record.
Their contentions can possibly be best summarized by quoting from the opening paragraph of the portion of their brief pertaining to this subject:
“Let it be recorded that we do not seek to surcharge the Trustee for losses due to the market recession of the past twenty months. We do contend that these losses would have been much less had the Trustee adopted a more prudent investment policy, given more attention to the management of this Estate, and observed sound policies of diversification, and taken prompt action in liquidating this trust when it ended January 30, 1969.”
Fundamentally, what they really complain of is that the corpus of this trust (of which objector Bernard Baron Friesen, a grandnephew of the within decedent, may ultimately be entitled to a share if he should survive all of decedent’s living nephews and nieces who are the income beneficiaries of the item Eleventh trust) is presently of a paper value substantially less than the $500,000 legacy by which it was created under decedent’s will at his death in 1933. As already noted, the accounting value of the principal balance for distribution is $486,481.90, with accountant’s statement attached of the assets as revalued as of September 1969 (the closing date of the accounting) in the aggregate of $378,371, less the cash overdraft due accountant of $13,099.16.
In the view we take of the questions raised by objectors, it is unnecessary to labor their arguments seriatim and at length, but in fairness to accountant, a few observations should be made.
In the first place, accountant has not had a free rein with respect to its exercise of powers of investment even within the range of so-called ‘legáis.” By item Twelfth, *373 clause 3, of decedent’s will, the testamentary trustees were given broad investment powers, in the first instance, if exercised with the approval of decedent’s brother Horace E. Smith, but such powers were significantly qualified and restricted by the final sentence of that clause: “In no event, after my brother’s death, shall any investment be made of trust funds in the purchase of stock of corporations.”
Horace E. Smith in fact died on June 17, 1939. Accordingly, as a practical matter, since the latter date accountant was limited to so-called “credit instruments” (fixed return investments), and any possible hedge against inflationary economic trends by investment in so-called “equities” was totally precluded. This circumstance renders almost irrelevant the conclusion of objectors’ allegedly expert investment counsellor whose critical opinions were obviously based to a substantial extent upon statistical analyses of the effect of inflationary and other economic trends upon funds invested in recent years past, respectively, in Treasury and corporate bonds, as contrasted with those invested in corporate stocks.
Secondly, again after noting that we make no actual determination of the question, the record of this audit in itself does not support or justify the accusation that accountant failed to give due attention to the management of the trust or to effectuate “sound policies of diversification” of investments. Its portfolio consists of United States Treasury bonds, public housing and authority obligations, Ohio and Pennsylvania Turnpike issues, school and other municipal bonds, and top-rated bonds of certain private corporations. For immediate cash purposes (remaining administration costs, accountant’s overdraft and commissions and counsel fees) $54,000 in corporate demand notes are on hand to be liquidated at par. The testimony discloses the *374 manner of periodic and other review given the account by accountant’s personnel. All that objectors have really shown in this connection is that as a matter of their hindsight opinion the trust funds might have been otherwise invested, for example, in mortgages or simple bank savings accounts, demonstrating theoretical after-the-fact benefit for the remaindermen.
Their complaint that accountant placed too much emphasis on comparatively long-term and tax-free bonds, rather than short-term and possibly taxable other types of credit obligations, because of the age and low tax bracket and other economic status of the life tenant Mrs. Gentner, is, apart from all other considerations, totally without evidential support in the record. While it was indicated that she was apparently about 52 years of age at the time of her death, there was absolutely no testimony to indicate either that accountant had reason to anticipate a short life expectancy for her (and, hence, arguably, to avoid long-term maturities), or that her taxable income status was such that accountant might well have exposed her to additional personal tax liability and so, with remarkable prescience, have avoided declining prices of tax-free issues to the benefit of the remaindermen interests.
Finally, it should be noted that objectors’ argument that accountant sustained a loss to this trust estate of $10,365.14 by self-dealing transactions in the purchase and sale from and to itself of units or certificates of participation in a so-called “Girard Municipal Bond Fund” is, most charitably, a reckless disregard for the actual facts. The truth is that these shares of a “pool” of sundry municipals set up and maintained by accountant without separate expense to the respective estates participating therein were acquired, not from accountant individually, but either from other trust *375 estates under its administration which for one reason or another might be required to liquidate some or all of its assets, under established and ostensibly equitable evaluation procedures, or from the enlargement of the fund itself by additional purchases on the market just as such purchases might have been made for the account of the within trust directly. Moreover, counsel shows little regard for the actual fact when he categorically states that this loss has been actually established in the final dollar amount of $10,365.14 by the accomplished sale of these units. This simply is not true. Accountant still has these participations on hand as part of its stated principal balance for distribution. While this investment pool is apparently maintained only for its (Girard’s) own fiduciary accounts and would not be distributed to Provident National Bank for purposes of the successor item Eleventh trust, it does not follow that the ostensible paper loss (based on a September 1969 revaluation, not a closed transaction) will be $10,000 or any other presently ascertainable and definite amount, or will be undue and unreasonable upon ultimate liquidation under all the circumstances.
Regardless of all of the foregoing observations, however, the only real basis upon which the auditing judge feels obligated to make legal disposition of objectors’ investment policy arguments against the within accounting and awards is that all such questions are academic, hypothetical and presently non-justiciable. The alleged ‘losses” of which objectors complain in fact have not been sustained and, so far as is presently predictable, may never be sustained. The “paper” depression of the capital value of the fixed obligation investments on the revaluation of September 1969 is quite apparently attributable almost solely to the abnormal and, hopefully only temporary, rise of commercial in *376 terest rates to fantastic new heights in the relevant past few years. It is necessarily a selfapparent truism that the going market price of fixed interest credit obligations payable in futuro will, as a general proposition, rise or fall inversely as the market interest rate falls or rises. An investor obviously will pay only half as much, everything else being equal, for a bond paying only three percent of face as he would for one paying six percent.
But, with the exception possibly of the units of participation in the Girard Municipal Bond Fund and the commercial demand notes, no need or occasion arises for the present conversion or liquidation of the securities which accountant has on hand. Principal is not now to be awarded in distribution to individual beneficiaries, but rather to Provident National Bank upon continuing trusts under item Eleventh of the will. Provident, notwithstanding its fiduciary status as succeeding trustee, not only has failed and refused to join objectors in their criticism of Girard’s administration as trustee of the within accounted-for fund, but also has affirmatively indicated on the within record that it is willing to accept the award of principal in kind as presently comprised.
One final question remains. Although not mentioned in their filed objections, objectors at the audit hearing and in argument questioned accountant’s practice of placing income funds on hand and received during the pendency of this audit proceeding into a checking account in its own commercial department. This practice is specifically authorized by section 403(c)(ii) of the Banking Code of 1965, 7 PS §403(c)(ii), and the auditing judge sees nothing wrong with the practice, provided that the funds so deposited do not remain uninvested or undistributed for an unreasonable period. The times involved in the instant case, under the cir *377 cumstances, have not been unreasonable; moreover, it is ironic that a substantial part of what delay there has been in completion of the within audit and award of account balances is attributable, in not inconsequential part, to objectors’ counsel’s own failure more timely to proceed.
The life tenant died on January 30, 1969. The accounting was stated as of September 24,1969, and was filed in time for audit by the court on December 1,1969. Because of notice problems, the audit was continued to January 5, 1970, and due written notice of the latter date went to more than 40 parties presently or potentially interested, including both objectors herein. Prior to the January audit date, the court received an inquiry from an attorney in Boston concerning a possible question for litigation by one of the parties notified, and, with the concurrence of counsel for accountant, the actual processing of the adjudication was held up by the auditing judge until respective counsel had had an opportunity to explore and resolve the problem. On January 19, 1970, the auditing judge was advised by such Boston attorney that his client no longer wished to appear and that the audit should proceed.
It was only thereafter, to wit, on February 2, 1970, that local counsel for the present objectors, for the first time entered his appearance and requested that the adjudication be further delayed until formal objections might be filed and heard on their behalf. Such objections were not filed until May 26, 1970. Hearing was held thereon on June 11, 1970. The transcript thereof was filed by the court reporter on August 25,1970, but for reasons not now apparent, the objections were not orally argued (as insisted upon by counsel for objectors) until November 2,1970. The prolonged absence of three of the judges of this court due to illness during the fall of 1970, plus an extended unfilled vacancy in *378 office in the same period due to the resignation of another, further contributed to the final delay in preparing and filing this adjudication.
Moreover, although it does not appear in the record but was stated in the reply brief filed at argument on November 2, 1970, by counsel for accountant, the income cash then on hand, said to amount to about $24,000, was and had been invested in interest-bearing demand notes pending the outcome of this case.
By reason of the foregoing considerations, the auditing judge believes that there is no merit to any of the objections filed by the Friesens, either formally on May 26, 1970, or more informally at the hearing or argument. Accordingly, their request that accountant be surcharged for the amounts of its commissions and counsel fees is hereby also denied.
Counsel on each side have belatedly raised a still further problem; both counsel for accountant and counsel for the objectors have, post-audit, filed respective petitions for the allowance of fees out of the estate. That filed by objectors’ counsel must be denied. No recovery of attorneys’ fees from an adversary or stake-holding party can be had on behalf of a private litigant in the absence of either an express statutory allowance thereof, an agreement of the parties for the same, or some other established exception specifically providing therefor: Corace v. Balint, 418 Pa. 262 (1965); Shapiro v. Magaziner, 418 Pa. 278 (1965). See, also, George v. Osvatics, 12 Bucks 14, 27(1962), and cases therein cited. Objectors have not brought themselves within any exception to the general rule, statutory or otherwise. Accordingly, accountant’s preliminary objections to the petition of counsel for objectors for counsel fees are hereby sustained and said petition is hereby denied, refused and dismissed.
*379 The petition for additional fees by counsel for accountant, however, is on a different footing. This allowance is sought by reason of the extra professional services furnished to accountant in connection with the instant objections to the account and scheme of proposed distribution. This application does fall within a recognized exception to the general rule: A fiduciary is entitled to an allowance out of the estate for counsel fees and other necessary expenditures incurred in successfully defending against a beneficiary’s attempts to impose a surcharge: Browarsky Estate, 437 Pa. 282 (1970). The auditing judge, therefore, hereby allows the accountant an additional credit, payable out of principal, for further counsel fees attributable to its successful defense against the within objections. The amount allowed, however, is for the reduced sum of $1,500, the requested amount of $2,500 is not approved.
No other questions for adjudication were stated in the petition for adjudication, nor were any apparent to the court from the record.
Subject to distributions in fact heretofore properly made, the net ascertained balances for distribution are’ hereby awarded as suggested by the last paragraph of the petition for adjudication.
A schedule of distribution in conformity to the within adjudication and to implement the foregoing awards shall be filed by accountant in due course.
The account is hereby confirmed, and it is ordered and decreed that Girard Trust Bank, trustee as aforesaid, shall make and pay the distributions herein awarded forthwith upon the absolute confirmation of the schedule of distribution herein directed to be filed.
And now, May 4, 1971, the within adjudication is directed to be filed and is hereby confirmed nisi.