# Simpson's Estate.

*Wills—Construction—Bequests—Intention— Last manifestation of intention—Disinheriting heir.*

1. An heir is not to be disinherited except by express direction or necessary implication, and he surely cannot be deprived of a legacy expressly given by an implication not necessarily arising from any part of the will, and which at most is a bare suspicion.

2. A testator, who had been twice married, died leaving surviving him seven children by his second wife and the children of two deceased children by his first wife. By his will he provided that "I give and bequeath" two hundred dollars to the latter grandchildren "and make no other gift or bequest to them." By the next clause he divided his entire residuary estate into seven equal parts, two of which he gave absolutely to his surviving sons, and the remaining five to trustees for his daughters, annexing to each bequest the condition that after the death of the daughter the "capital" given in trust for her for life, was to be divided among her living children and the issue of such as might be deceased, and "in case of the decease of my daughter (naming her) without leaving a child or children or issue of any deceased child or children her surviving, then the estate real and personal given and devised in trust for her for life shall go and I hereby give and devise the same to such person or persons and for such estates and shares therein to whom and as the same would have gone (under the Intestate Laws of this Commonwealth) had she my said daughter Mary died seized and possessed thereof intestate and unmarried. Provided however that in such case any shares or proportions thereof that would go to any of my daughters herein named shall go to and vest in their trustees herein constituted and appointed upon the same trusts upon which my said daughters' shares of my estate are herein given and devised." One of the daughters died without issue and the balance in the hands of the testamentary trustee was claimed by those who were of her whole blood, to the exclusion of the children and grandchildren of her deceased half-brothers. *Held,* that the last and controlling manifestation of the intention of the testator was that upon the death of his daughter her share of the estate should go to those who were entitled to it under the intestate laws and that this included the kin of half blood.

Stickle's Appeal, 29 Pa. 234, followed. Herr's Estate, 28 Pa. 467, differentiated.

Argued March 25, 1914. Appeals, Nos. 396, 397, 398, 399, 400 and 401, Jan. T., 1913, and No. 5, Jan. T., 1914, by the Philadelphia Trust, Safe Deposit and Insurance Company, Trustee, for Josephine S. Lentz, Virginia A. Hill, Priscilla T. Lippincott, Elizabeth C. Simpson, et al.; from Decree of O. C., Philadelphia Co., Jan. T., 1888, No. 263, directing distribution in the Estate of James Simpson, Deceased. Before BROWN, MESTREZAT, ELKIN, POTTER and MOSCHZISKER, JJ. Affirmed.

Adjudication of trustee's account. Before DALLETT, P. J.

The facts appear by the opinion of the Supreme Court.

Exceptions were filed to the adjudication by the Philadelphia Safe Deposit and Insurance Company, Trustee, and by Priscilla T. Lippincott, which exceptions were dismissed and the account confirmed.

*Error assigned* was in dismissing exceptions to the adjudication and confirming the account.

*John G. Johnson* and *Maurice Bower Saul,* for the Philadelphia Trust, Safe Deposit and Insurance Company, Trustee, appellant, with them *Henry Spalding* and *Alfred Moore,* for Josephine S. Lentz, Virginia A. Hill and Priscilla T. Lippincott, appellants.—The testator expressed the clear intention that the descendants of his deceased sons by his first marriage should not share in the distribution of his estate: Herr's Est., 28 Pa. 467; Sullivan v. Straus, 161 Pa. 145; McGovran's Est., 190 Pa. 375; Everitt's Est., 195 Pa. 450; Tucker's Est., 209 Pa. 521; Habecker's Est., 43 Pa. Sup. Ct. 86.

*Walter Biddle Saul,* for Anna Heineman, appellee, and *James Arthur Ewing,* for Isabella C. Ewing, et al., appellees, with them *Franklin E. Barr,* for George J. Simpson and Thomas B. Prosser, guardians, appellees. —The testator left no doubt as to his intent, which was to equalize and not to disinherit: Stickle's App., 29 Pa. 234; Fahnestock's Est., 147 Pa. 327; Sigel's Est., 213 Pa. 14; Hoyt's Est., 236 Pa. 433. An heir at law is not to be disinherited without express devise or necessary implication, such implication importing, not natural necessity, but so strong a probability that an intention to the contrary can not be supposed: Bortner's Est., 43 Pa. Sup. Ct. 429; Bender v. Dietrick, 7 W. & S. 284; Lehman v. Lehman, 215 Pa. 344; Grothe's Est., 229 Pa.

186; Weber's App., 17 Pa. 474 (1852); Carr's Est., 202 Pa. 394, (1902).

OPINION BY MR. JUSTICE BROWN, May 4, 1914:

James Simpson, who had been married twice, died October 29, 1886. By his first marriage he had two children—Arthur and Adam—both of whom died, leaving children, before he made his will. By his second marriage he had seven children—two sons and five daughters—all living at the time of his death. After some minor bequests and devises and a direction as to the use to be made of his residence, the testator provided as follows by the seventh clause of his will: "Inasmuch as I consider that the families of my deceased sons, Arthur and Adam are abundantly and sufficiently provided for now in order in my judgment to make a fair and equal division of my estate (considering the opportunities and advantages which I gave to my said sons Arthur and Adam) I give and bequeath the sum of One hundred dollars ($100.) to the two children of my said son Adam to be equally divided between them share and share alike and make no other gift or bequest to them. And I give and bequeath the sum of One Hundred Dollars ($100) unto the said children of my said deceased son Arthur S. Simpson to be equally divided between them share and share alike and make no other gift or bequest to them." By the next clause the testator disposed of his entire residuary estate, dividing it into seven equal parts, two of which he gave absolutely to his two surviving sons, James and Charles. He gave the remaining five parts or shares to trustees for his five daughters, one of whom, Mary B. Castleberry, died June 27, 1913, without leaving issue surviving. The following condition annexed to the bequest of the one-seventh of the testator's residuary estate in trust for her is annexed to the bequest to each of the other four daughters: "And from and immediately after the decease of my said daughter then in trust to assign transfer pay over divide and

distribute all the capital of the said seventh part or share (so given and devised in trust for her for life) to and among the child or children of the said Mary living at her death and the issue of any of her children who may then be deceased their several and respective heirs executors, administrators and assigns in equal parts and shares but so that any issue of such deceased child or children shall only have and take the same share which his her or their deceased parent would have taken if living. And in case of the decease of my said daughter Mary without leaving a child or children or the issue of any deceased child or children her surviving then the estate real and personal given and devised in trust for her for life shall go and I hereby give and devise the same to such person or persons and for such estates and shares therein to whom and as the same would have gone (Under the Intestate Laws of this Commonwealth)· had she my said daughter Mary died seized and possessed thereof intestate and unmarried. Provided however that in such case the shares or proportions thereof that would go to any of my daughters herein named shall go to and vest in their trustees herein constituted and appointed upon the same trusts upon which my said daughters' shares of my estate are herein given and devised."

At the adjudication of the account of the testamentary trustee of the fund bequeathed for the use of Mary B. Castleberry, the balance in its hands was claimed by those who were of her whole blood, to the exclusion of the children and grandchildren of her deceased half brothers, Arthur and Adam. This claim was based upon the seventh clause of the testator's will, in which, after giving $100 to the children of each of his deceased sons, he says he makes no other gift or bequest to them. It is contended that this excludes them from any participation in the fund which was held in trust for the deceased daughter. On the other hand, the children and grandchildren of the two deceased half-brothers of the deceased cestui que trust claim two shares of the fund

under the following clause in the bequest for her use and benefit: "In case of the decease of my said daughter Mary without leaving a child or children or the issue of any deceased child or children her surviving then the estate real and personal given and devised in trust for her for life shall go and I hereby give and devise the same to such person or persons and for such estates and shares therein to whom and as the same would have gone (Under the Intestate Laws of this Commonwealth) had she my said daughter Mary died seized and possessed thereof intestate and unmarried." The court below sustained the claim of the descendants of the two half-brothers, and from its decree, awarding the fund in the hands of the accountant to those who would have been entitled to it under the intestate laws if Mary B. Castleberry had died seized and possessed thereof, intestate and unmarried, we have this appeal.

When the estate of the testator was distributed among those to whom he directed it to go in the first instance, the children of his two deceased sons were entitled to but $200, for he had so provided, and his reason for directing that they should receive no more upon his death appears in the nominal bequests to them. If there were nothing in the subsequent clauses of the will indicating an intention that, upon a certain contingency, these grandchildren should further participate in the distribution of the testator's estate, the clause upon which the appellant relies would exclude them from the distribution of the fund in the hands of the accountant. What does the testator clearly and unequivocally say shall become of the seventh part of his residuary estate, to be held in trust for his daughter Mary, if she should die without leaving a child or issue surviving? If she should so die, the testator himself gives and bequeaths that part or share to those to whom it would have gone under the intestate laws of this Commonwealth had the daughter died seized and possessed thereof, intestate and unmarried. If the daughter Mary had died seized and pos-

sessed in her own right of the fund before the court below for distribution, the appellees, descendants of her brothers of the half blood, would have participated equally with her brothers and sisters of the whole blood, and the expressed intention of the testator must control in this as in all cases. The words which he used to express his intention as to what should be done upon the death of his daughter Mary, without leaving issue, with that portion of his estate held in trust for her, can have but one meaning, and that meaning must be given to them. The question in expounding a will is always, what do the words of the testator mean: Hancock's Appeal, 112 Pa. 532. With the meaning of testamentary words clear and unequivocal, the intention of the testator becomes equally so and is always prevailing. All this is conceded by learned counsel for appellants, but it is insisted that a controlling intention of the testator, as expressed in the seventh clause of his will, runs all through it, excluding the appellees, children and grandchildren of the two deceased sons, Arthur and Adam, from any participation in his estate in addition to the bequests of $200. In support of this it is urged that the testator's equal distribution of his estate will be defeated if the decree of the court below is sustained. This assumes—and, indeed, it is so argued here—that the equality which he had in mind can be maintained only by construing his whole will as meaning that the entire residuary estate belongs exclusively, and without regard to any contingency contemplated by the testator, to the children by his second marriage. He undoubtedly intended equality in the distribution of his estate, but the construction which we are asked to put upon his will might lead to an inequality which, it may be safely assumed, he never contemplated. One of his daughters has already died without leaving issue; the other four may leave no issue: one of the two sons by the second marriage is dead, and apparently left no issue; upon the death of each of the other four daughters leaving no issue, the entire resid-

uary estate, under the contention of appellant, would ultimately pass to the issue of one of the sons by the second marriage. It may be that, to avoid a contingency of inequality in the ultimate distribution of his estate, the testator directed that, upon the death of any daughter without leaving issue, the share of his estate held in trust for her should be distributed under the intestate laws as if it had belonged absolutely to her, an unmarried woman. But it is entirely immaterial what his purpose was in making such provision in disposing of what continued to be a part of his estate, for he had a right to say just where his whole estate, or any portion of it, should ultimately go, and the court below has but given effect to his clearly-expressed intention. If he had intended to exclude the children and grandchildren of his two sons by his first marriage from the present distribution, he could have easily so provided, as he did in excluding the husband of a deceased daughter, dying without issue, from participation in the distribution of the share of his estate held in trust for her.

The court below relied upon certain authorities in support of its decree allowing the claims of the appellees to two distributive shares of the fund in the hands of the accountant. As the decree of distribution is the one made by the testator himself, authorities were hardly needed to vindicate it, and we shall refer to only one of those cited by the lower court. In Stickle's Appeal, 29 Pa. 234, the testator, after bequeathing to Peter Stickle $1.00, in addition to what he had already given him, gave all the residue of his property to his sister for life, and at her death the same was to be equally divided among his "nearest heirs." Stickle was one of those heirs. Upon the death of the sister, in distributing the estate which had been left to her for life, Stickle's claim to a portion of it, as one of the nearest heirs of the testator, was resisted, on the ground that, by the $1.00 legacy given him, the testator intended he should have no more out of his estate. The court below held that he was en-

titled only to the $1.00 legacy. In reversing this and holding that he was entitled to participate equally with the other nearest heirs, Mr. Chief Justice Lewis used the following language, which is peculiarly appropriate in construing the will now before us: "Where there are two clauses in a will which are so inconsistent with each other that it is impossible to give effect to both, the first must give way to the last, because the latest manifestation of the will of the testator is to control. But in the construction of a written instrument, it is the duty of the court to endeavor to give effect to every part of it. It is only when this is impossible that the rule first mentioned has place. With this principle in view, we see no difficulty in the case before us. The legacy of one dollar is payable immediately and absolutely. The residuary legacy does not take effect in possession until after the death of the tenant for life. The enjoyment of the first by the legatee, depended upon his being alive at the death of the testator. The enjoyment of the other by the legatee rests on the contingency of his surviving the tenant for life. They are not so inconsistent with each other as to require either to give way. Both may well take effect. It may be possible that the legacy of one dollar to Peter Stickle was given under the erroneous notion that it would cut him out of all further share in the estate. But the bequest can have no such effect; whereas here, the testator, in a subsequent clause, gives a residuary legacy to a class which clearly includes the first legatee. He is one of the 'nearest heirs' of the testator, and by that description he must come in equally with the other residuary legatees named in the auditor's report. If an heir is not to be disinherited except by express direction, or necessary implication, he surely cannot be deprived of his legacy, expressly given, by an implication not necessarily arising from any part of the will, and which, at most, is but a bare suspicion. The testator may have intended to cut him off with a dollar, but he has expressed a contrary intention." The latest

manifestation of the intention of James Simpson, as found in his will, and which is, therefore, controlling, is that, upon the death of his daughter, the share of his estate which had been held in trust for her should go to those who would be entitled to it under the intestate laws if she had died unmarried, intestate and seized thereof. This expressly includes the appellees, and no line of reasoning based upon the seventh and earlier clause of the will can possibly exclude them.

Sullivan v. Straus, 161 Pa. 145; McGovran's Est., 190 Pa. 375; Everitt's Est., 195 Pa. 450, and Tucker's Est., 209 Pa. 521, are four of the five cases relied upon as authorities in support of this appeal, but they are not to be so regarded, for the testator or testatrix in each case, in plain words, unmistakably excluded from any participation in his or her estate the parties claiming distributive shares of the same. This is manifest from a mere glance at each of the wills.

One of the members of the court below, in dissenting from the decree concurred in by all of his colleagues, was of opinion that Herr's Est., 28 Pa. 467, is "practically the present case," and this view has been pressed upon us by learned counsel for appellant, but we cannot adopt it. John Herr, the testator, left surviving him six children and two grandsons, children of a daughter who was deceased at the time his will was executed. For these grandsons he made the following provision: "I give and bequeath unto my two grandsons, Benjamin Eshelman and John Eshelman (being the children of my daughter Anna, deceased), one thousand dollars, lawful money of Pennsylvania; that is to say, I give five hundred dollars to each of them, their heirs and assigns for ever, and the same to be their share or shares in full coming to them out of my estate, both real and personal, and to be paid unto them as they severally arrive at the age of twenty-one years." By a subsequent clause a fund was given to a trustee for the support and maintenance of an imbecile daughter, with a direction that, upon her death, any

unexpended balance in the hands of the trustee should be equally divided among the children of the testator and the legal representatives of any that might be dead. In holding that this provision did not include the two grandsons, children of the daughter Anna, who was dead when her father made his will, we said: "Looking through the will, it is observable that the testator provides specifically for his wife, his two grandsons then living, and for his sons John and Henry; and then directs that the residue of his estate, including also the sums charged on lands given to the sons, shall be divided into six equal shares among his six children, whom he names. Mrs. Eshelman is not named among his children, because he had in a previous clause taken notice of her death. In an after clause of the will he recites the imbecility of Barbara and appoints a trustee for her share, and then orders that after her death so much of her share as may remain unexpended shall go to 'all my children, or if any of them be dead, to their legal representatives share and share alike.'

"It is argued that this language was intended to comprehend Mrs. Eshelman, and that her surviving son is thereby admitted to the bequest; but after an attentive consideration of all that has been urged both by the auditor and by counsel in support of this view, we are unable to adopt it for these two reasons:

"1. The testator, in providing specifically for his grandsons, declared that the $1,000 given to them was to be 'their share or shares in full coming to them out of my estate both real and personal.' He looked to no further provision for them in any contingency which might befall his family. That he meant this bequest to be their full share of his estate is so incontestably proved by his words that any construction which would give them more, would derange the scheme of distribution he had in mind, and substitute another will for that which was written.

"2. The hypothetical words quoted above, 'if they or

any of them be dead,' must have referred to the children whom he enumerated as living when he made his will; because the event on which they were to succeed to Barbara's share, was future—her death. It seems absurd to make the testator speak hypothetically of the future death of Mrs. Eshelman, whom he had already buried The leading principle, said Judge ROGERS in Gross's Est., 10 Barr 361, in relation to such a devise is, that where a bequest is to children in a class, children in existence at the death of the testator are alone entitled, among whom posthumous children are to be considered.

"If any of them be dead, is exactly equivalent to the phrase, if any of them shall be dead at the happening of the future event specified; and would any father speak of a deceased daughter in that way? Whilst contemplating his own death and Barbara's the testator did not forget Anna's, for he mentions it, and provides for her children, and enumerates his remaining children, and of them exclusively—not of them including Anna, he says, if any shall be dead when Barbara dies, their representatives shall take. He had classified in his thought the several objects of his bounty, and appointed each a portion in their order. By his grandsons he meant the children of his deceased daughter; by his children and their representatives he meant his living children and those who should come after them. It is so apparent from all parts of the will that this was the distinction in his mind, that we cannot disregard it consistently with his unquestionable right to do as he would with that which was his own."

Nothing in the foregoing words has any application in construing the will now before us. In the will that was then construed the testator declared that the provision he had made for his two grandsons was to be "their share or shares in full coming to them out of my estate, both real and personal." No such words are found in the will of James Simpson, and when John Herr subsequently declared who were to take any unexpended bal-

ance in the hands of the trustee upon the death of the incompetent daughter, he intended by the word "children," as Mr. Justice WOODWARD plainly showed, his children living at the time of his death.

More has been said than was needed to sustain the decree of the court below, which is affirmed at appellant's costs.