**Simpson Estate**

Before Boyle, P. J., Rahauser and Hay, JJ.

*Norman R. Schade,* for accountants.

*Louis R. Dadowski, Jr., John G. Frazer, Jr., J. R. Van Kirk, Sanford M. Chilcote, Thomas J. Cox, Jr., George C. Burgwin, Robert E. McKee, Larry E. Phillips, Charles M. Thorp, 3rd, Alexander L. McNaugher, F. J. Torrance Baker, Ivan E. Birsic,* and *J. Paul Farrell,* for claimants.

*William H. Colbert,* for Commonwealth.

HAY, J., May 21, 1969.—Decedent, Mabel Wright Simpson, died testate on June 21, 1960, and her last will and testament dated September 21, 1959. and the codicils thereto dated April 12, 1960, and June 8, 1960, respectively, were duly probated in the office of the Register of Wills of Allegheny County in will book volume 351, page 245.

By decree dated October 12, 1962, as amended on November 14, 1962, this court awarded stock, cash and tangible personal property to D. S. Thomas, Christian F. Hoffmann and The Union National Bank of Pittsburgh, Pennsylvania, trustees, in accordance with the provisions of decedent's will and codicils.

Paragraphs eleventh (f), twelfth and thirteenth of the decedent's last will and testament read as follows:

"ELEVENTH: (f) Upon the death of Wilda B. Leidy the trust created herein shall cease and determine and the balance then remaining in said trust shall be distributed to the persons named as beneficiaries in the next three succeeding paragraphs of this my Will, said paragraphs being numbered 'Twelfth', 'Thirteenth' and 'Fourteenth'."

"TWELFTH: I give and bequeath the following sums to the following named beneficiaries:

"(a) The sum of Ten thousand ($10,000.00) Dollars to the EASTERN STAR HOME at Bellevue, Pa.

"(b) The sum of Fifteen thousand ($15,000.00) Dollars to CHILDREN'S HOSPITAL of Pittsburgh, located on DeSoto Street.

"(c) The sum of Fifteen thousand ($15,000.00) Dollars to the PROTESTANT HOME FOR INCURABLES, 5500 Butler Street, Pittsburgh, Pa.

"(d) The sum of Fifteen thousand ($15,000.00) Dollars to SKIN AND CANCER FOUNDATION OF PITTSBURGH, having its office at 4518 Winthrop Street, Pittsburgh, Pa.

"(e) The sum of Five thousand ($5,000.00) Dollars to DEPAUL INSTITUTE FOR THE DEAF, located at Castlegate Avenue, Pittsburgh, Pa.

"(f) The sum of Fifteen thousand ($15,000.00) Dollars to St. BARNABAS FREE HOME, located at Gibsonia, Pa.

"(g) The sum of Five thousand ($5,000.00) Dollars to ANIMAL FRIENDS, INC., located at 3331 Penn Avenue, Pittsburgh, Pa.

"(h) The sum of Five thousand ($5,000.00) Dollars to ANTIVIVISECTION SOCIETY, having its office in the Bakewell Building, Pittsburgh, Pa.

"(i) The sum of Fifteen thousand ($15,000.00) Dollars to INDUSTRIAL HOME FOR CRIPPLED CHILDREN, located at 1426 Denniston Avenue, Pittsburgh, Pa.

"(j) The sum of Three thousand ($3,000.00) Dollars to THE LITTLE SISTERS OF THE POOR for their home for the aged on Penn Avenue, Pittsburgh, Pa.

"(k) The sum of Fifteen thousand ($15,000.00) Dollars to SCHRINER'S HOME FOR CRIPPLED CHILDREN to be paid to the particular home which includes the Pittsburgh District.

"(l) The sum of Five thousand ($5,000.00) Dollars to the SALVATION ARMY, Pittsburgh, Pa.

"(m) The sum of Ten thousand ($10,000.00) Dollars to the MASONIC HOME at Elizabethtown, Pa.

"(n) The sum of Two thousand ($2,000.00) Dollars to the MERCY HOSPITAL in Pittsburgh, Pa.

"THIRTEENTH: I give and bequeath the balance of my estate to the institutions named in the preceding paragraph (paragraph 'Twelfth') of this my Will in the same proportions as the gifts made to them."

Wilda B. Leidy died on June 10, 1968, and the trust created under decedent's last will and testament ceased as was set forth in paragraph eleventh (f) quoted above.

Thereafter, the surviving trustees, more specifically Christian F. Hoffmann and The Union National Bank of Pittsburgh, filed a second and final account and various supplemental accounts and statements showing a balance of $76,568.86 available for distribution to the 14 charitable beneficiaries, in the amounts provided, named in paragraph twelfth. As recited above, paragraph thirteenth provided that the residuary estate should go to the institutions named in paragraph twelfth and in the same proportions. On October 21, 1968, the surviving trustees at the audit of the second and final account presented their petition for distribution, which among other matters required this court to determine the manner and form in which the balance of the trust should be distributed to the fourteen charitable beneficiaries. More specifically the question was raised as to whether distribution should be made equally or on a pro rata basis to the said charities, as provided in paragraph twelfth.

On March 11, 1969, Judge Kramer, then of this court, signed a decree providing for the distribution of the balance of the fund to the 14 charitable beneficiaries on an equal basis. On March 19, 1969, the Skin and Cancer Foundation, along with several other charitable beneficiaries filed exceptions to Judge Kramer's decree making distribution on an equal basis. The matter was argued before the court en banc on April 7, 1969. Briefs were filed at that time by the Skin and Cancer Foundation, the

Shriners' Home for Crippled Children and the Home for Crippled Children, formerly the Industrial Home for Crippled Children, against the aforementioned decree. The position of these charities was argued only by counsel representing the Skin and Cancer Foundation, whose argument was supported by various other charities. The Little Sisters of the Poor* was the only charitable beneficiary which filed a brief in support of the decree.

The question before the court en banc was specifically whether or not Mabel Wright Simpson, under the provisions of her last will and testament and codicils, intended the fourteen named charitable beneficiaries to share in the balance of her trust estate equally or on a pro rata basis. The pertinent portions of her will, specifically paragraphs twelfth and thirteenth, were quoted above.

It is hornbook law (1) that testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain. See Burleigh Estate, 405 Pa. 373 (1961); Dinkey Estate, 403 Pa. 179 (1961); Pruner Estate, 400 Pa. 629 (1960); Wanamaker Estate, 399 Pa. 274 (1960); and Hope Estate, 398 Pa. 470 (1960).

The first duty of this court therefore is to examine the will and if possible ascertain its meaning without

---

* It should be noted that The Little Sisters of the Poor, along with Mercy Hospital, received the smallest amounts of the fourteen named charitable beneficiaries.

reference to canons of construction: Weir's Estate, 307 Pa. 461, 467 (1932) and Groninger's Estate, 268 Pa. 184, 187 (1920).

As our Supreme Court stated in Brennan's Estate, 324 Pa. 410 (1936), at page 414:

". . . every will is in a sense unique, and for this reason precedents are of little value, for words used in differing circumstances have varying meanings: . . ."

It has often been stated that no will has a brother: Lockhart's Estate, 306 Pa. 394, 400 (1932). " 'Each will is its own best interpreter, and a construction of one is not certain guide to the meaning of another': Williamson's Estate, 302 Pa. 462, 466; Scott's Trust, 322 Pa. 1.": Brennan's Estate, 324 Pa. 410, 414 (1936).

As Mr. Justice Jones stated in Vandergrift Estate, 406 Pa. 14, 26 (1962):

". . . a will must be so construed, if possible, as to give effect to every word employed by the testator and a construction which renders any of the words nugatory and futile must be rejected: . . ."

The intent of testator must not be gleaned from a single paragraph standing alone, but must be gathered from the whole will itself: Weaver Estate, 390 Pa. 128; O'Reilly Estate, 371 Pa. 349.

A careful reading of Mabel Wright Simpson's entire will and codicils, and in particular those paragraphs which have been quoted above show what this court feels was clear intent as to testatrix's scheme of distribution of the corpus of her trust estate after the death of Mrs. Leidy.

As has been previously pointed out by applicable case law and as is set forth in re Earle Estate, 369 Pa. 52, 56 (1951), this court must examine the will and if

possible ascertain its meaning without reference to the canons of construction. Testatrix in paragraph eleven expressed an intent to maintain a home for her friend, Wilda B. Leidy, and to give Mrs. Leidy some moneys on which to live during the term of her natural life. Funds remaining after the death of Mrs. Leidy were to go to the beneficiaries named in paragraph twelfth, with suitable residuary and emergency provisions set forth in paragraphs thirteenth and fourteenth. In paragraph twelfth of her will, testatrix made cash bequests in varying amounts from $15,000 to $2,000 to 14 different charities. In paragraph thirteenth she gave the balance of her estate to those charities in the same proportions as the gifts made to them. It seems obvious therefore that in reading paragraph eleventh (f) in conjunction with paragraphs twelfth and thirteenth, testatrix intended that any remaining moneys of her estate would be distributed to the named charities in proportion to the specific cash bequests as set forth in paragraph twelfth, and thus bring about a pro rata distribution of any remaining monies of the trust res: Burleigh Estate, 405 Pa. 373 (1961). This was the scheme of her will as to the various charitable institutions.

Assuming, however, without deciding that a conflict does exist between paragraphs eleventh (f) and thirteenth, of the decedent's Last Will and Testament, that is, that one calls for an equal distribution and the other for a pro rata distribution, then this court must apply rules of construction which are to be invoked when two clauses are totally inconsistent and incapable of reconciliation. See Richley Estate, 394 Pa. 188, 194 (1958); Simpson's Estate, 245 Pa. 244 (1914); Fisher Estate, 355 Pa. 105 (1946) and 6 Hunter's Pennsylvania Orphans' Court Commonplace Book, p. 218,

Wills, §2(e). In ascertaining the intention and purpose of a testatrix as expressed in her will, we should, if possible, harmonize the language so as to give effect to what apparently might be inconsistent and repugnant clauses or provisions. We are not at liberty to disregard plain words and say that they are meaningless, unless after a careful consideration of the entire instrument, it is not possible to give them any meaning: Torchiana's Estate, 292 Pa. 470; Mayer's Estate, 289 Pa. 407. Moreover, where there is irreconcilable conflict, a general clause must always give way to one which is specific: Cassidy's Estate, 344 Pa. 179 (1942), and the later of incompatible clauses in a will must prevail: Richley Estate, 394 Pa. 188, 194 (1958). See also Phillips' Estate, 205 Pa. 504 (1903) and Fisher Estate, 355 Pa. 105, 106 (1946).

In the same light another rule of construction is that where a particular intention is inconsistent with the general scheme of distribution or intent, the former must give way to the latter: Simpson's Estate, 245 Pa. 244 (1914).

In Keefer Estate, 353 Pa. 281 (1946), wherein 69 C. J. 66, §1121, was cited, the court stated:

"Where particular terms, as expressed in some part of the will, are inconsistent with and repugnant to the testator's general intention as ascertained from all the provisions of the will, the general intention must prevail (citing cases), and in case of doubt a will should be construed in favor of a general or primary intention."

See also Walker Estate, 376 Pa. 16 (1954); Peters v. Peters, 307 Pa. 476 (1932); Lefebvre v. D'Arcy, 236 Pa. 235 (1912) and 6 Hunter Wills, §2(f), page 219.

In applying these rules of construction to this will, we have therefore the following:

If paragraphs eleventh (f) and thirteenth are totally inconsistent, then the latter, paragraph thirteenth, referring as it does to paragraph twelfth, shall have pref-

erence. See Richley Estate, 394 Pa. 188 (1958); O'Brien Estate, 381 Pa. 322 (1955). In addition thereto, paragraph eleventh (f) is a general clause whereas paragraph thirteenth is specific in setting out that the beneficiaries are to receive testatrix's bounty in the same proportions as the gifts made to them as is set forth in the preceding paragraphs (paragraph twelfth). Therefore, in interpreting the intention of the testatrix from the whole will, and in applying those applicable rules of construction, we would reach the same conclusion as if we had not applied them, and in harmonizing the language we must conclude that in applying those applicable rules of construction, the testratrix intended *any* remainder to be given to the institutions in pro rata shares as set forth in paragraph twelfth of her will.

This court therefore finds that whether decedent's intent be derived from the clear language of the will itself, or in the alternative by the application of the aforementioned rules of construction, the distribution of the corpus of this trust res must be distributed on a pro rata basis in accordance with paragraph thirteenth of decedent's will and a decree will be made accordingly. This was her plan and we must honor it.

### DECREE

And now, to wit, May 21, 1969, exceptions having been filed and after argument thereon before the court en banc and after consideration thereof, it is ordered, adjudged and decreed that the exceptions, filed by the Skin and Cancer Foundation of Pittsburgh, the Shriner's Home for Crippled Children, the Home for Crippled Children, Western Pennsylvania Eastern Star Home, Children's Hospital of Pittsburgh and St. Barnabas Free Home, to decree no. 2975 of 1960 dated March 11, 1969, are hereby sustained. A decree of distribution will be entered in accordance with this opinion, making distribution to the charities on a pro rata basis.